**CARIBBEAN TRADING AND FIDELITY CORPORATION,**
Petitioner–Appellee,

v.

**NIGERIAN NATIONAL PETROLEUM CORPORATION, Respondent–Appellant.**

No. 1924, Docket 91–7445.

United States Court of Appeals, Second Circuit.

Argued July 23, 1991.

Decided Oct. 30, 1991.

Gerald A. Novack, New York City (Carol D. Quackenbos, Beverly L. Brown (Student Clerk), Lord Day & Lord, Barrett Smith, Melvin J. Tublin, Michael O. Hardison, Poles, Tublin, Patestides & Stratakis, of counsel), for petitioner-appellee.

Joseph D. Pizzurro, New York City (Miriam K. Harwood, Curtis, Mallet-Prevost, Colt & Mosle, of counsel), for respondent-appellant.

Before WINTER, ALTIMARI and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

This appeal involves an arbitration proceeding in Nigeria between Nigerian National Petroleum Corporation ("NNPC") and Caribbean Trading and Fidelity Corporation ("CTFC"). CTFC won an arbitration award in that proceeding and then brought a petition in the Southern District of New York for confirmation and enforcement of the award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("Convention"). *See* 9 U.S.C.A. § 201 note (West Supp.1991). NNPC moved to dismiss this petition. Judge Keenan stayed the action pending completion of related Nigerian proceedings and ordered NNPC to post security pursuant to Article VI of the Convention. NNPC moved for reconsideration, arguing for the first time that the portion of the order requiring it to post security violated the Foreign Sovereign Immunities Act ("FSIA"). Judge Keenan denied this motion on the ground that new matters may not be raised in motions for reconsideration under the Southern District's Civil Rule 3(j). NNPC appealed. We dismiss the appeal for lack of jurisdiction. Treating the appeal as a petition for a writ of mandamus, we deny the petition.

## BACKGROUND

NNPC is a statutory corporation owned by the government of Nigeria and is a "foreign state" for purposes of the FSIA. 28 U.S.C. § 1603(a) (1988). CTFC is an Anguillan, British West Indies corporation. In April 1985, NNPC entered into a contract for the sale of Nigerian crude oil. Although CTFC's status as a party to the contract remains in dispute, CTFC did sign the contract. Disputes involving the con-

tract arose, and, as the contract required, the parties went to arbitration in Nigeria. On March 28, 1990, the arbitrators awarded CTFC $10,255,728.80 in damages and 4,110,000 barrels of oil.

CTFC then petitioned for confirmation of the arbitration award in the Southern District of New York, pursuant to Articles I and III of the Convention, to which the state of Nigeria is a party. On June 25, 1990, NNPC petitioned the High Court of Lagos State in Lagos, Nigeria, to set aside the arbitration award. NNPC also moved in the Southern District to dismiss CTFC's petition for confirmation of the arbitration award. NNPC argued that the district court lacked subject-matter and personal jurisdiction over NNPC under the FSIA. 28 U.S.C. §§ 1330, 1604 (1988). Additionally, NNPC contended that even if the district court had jurisdiction, it should not recognize the award under Articles IV and V of the Convention. Finally, NNPC argued that, its other contentions failing, the district court should stay the action during the pendency of the Nigerian proceedings, pursuant to Article VI of the Convention. CTFC in turn requested an order requiring NNPC to post security should a stay issue.

In his written opinion, Judge Keenan expressed doubt about the existence of subject-matter and personal jurisdiction under the FSIA, 28 U.S.C. §§ 1330, 1604, 1605, but declined to resolve those issues. Instead, he stayed the proceeding pending a determination by the High Court of Lagos of the validity of the arbitration award and ordered NNPC to post security of $10,255,-728.80. The order requiring the posting of security was based on Article VI of the Convention, which provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

9 U.S.C.A. § 201 note (West Supp.1991). NNPC then moved for reconsideration, arguing for the first time that the order requiring the posting of security was barred by Section 1609 of the FSIA. Section 1609 states that "the property ... of a foreign state shall be immune from attachment[,] arrest and execution" except where, as provided by Section 1610(d), explicitly waived or necessary to satisfy a judgment. NNPC analogizes the order to post security to a prejudgment attachment and contends that Section 1609 immunizes it from such an order. Judge Keenan denied this motion, holding that under Local Rule 3(j), NNPC's invocation of Section 1609 was untimely because it could not be raised for the first time in a motion for reconsideration. It is from this order that NNPC now appeals.

## DISCUSSION

### A. *Jurisdiction Under the Collateral Order Doctrine*

 Orders denying or requiring security are obviously interlocutory, and questions regarding their appealability turn on the applicability of the so-called collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen*, the Supreme Court permitted an appeal from a refusal by a district court to order the posting of security by a plaintiff in a derivative action. *Cohen* held appealable "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26. A subsequent gloss upon *Cohen* has specified three conditions for appealability under the collateral order doctrine. The order must: (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S.

463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (citations omitted).

■ As *Cohen* held, orders denying security fall within the collateral order exception and are appealable. This appealability stems from the fact that the denial of security is, absent a change of conditions, conclusive with regard to that issue of security, is separable from the merits of the underlying action, is of great importance because funds may not be available at a later date to satisfy a judgment, and, if erroneous, cannot be redressed on appeal at the conclusion of the action. In contrast, orders requiring the posting of security are analogous to orders denying motions to vacate attachments, which are not appealable. *See Drys Shipping Corp. v. Freights, Sub–Freights, Charter Hire*, 558 F.2d 1050, 1051 (2d Cir.1977). We therefore believe that orders requiring security are also not appealable. *See Seguros Banvenez S.A. v. S/S Oliver Drescher*, 715 F.2d 54, 57 (2d Cir.1983) (Mansfield, J., concurring) (appeal from "the district court's non-final security order ... does not fit within the *Cohen* exception"). The distinction between orders denying security and those granting it lies in the original *Cohen* formulation that the issue must be "too important to be denied review." 337 U.S. at 546, 69 S.Ct. at 1226. Orders granting security generally cause no irreparable loss in that parties posting security will be repaid with interest if they prevail.

NNPC argues, however, that Judge Keenan's order requiring security violates the FSIA, which establishes for foreign states an "immun[ity]" from prejudgment attachment. Citing a number of cases holding appealable denials of claims of immunity under the FSIA, NNPC argues that the order in question is immediately appealable. *See, e.g., Stena Rederi AB v. Comision de Contratos del Comite*, 923 F.2d 380, 385–86 (5th Cir.1991); *Compania Mexicana de Aviacion, S.A. v. United States District Court*, 859 F.2d 1354, 1358 (9th Cir.1988); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346–47 (7th Cir.1987).

However, these cases deal exclusively with claims of immunity from suit based on Section 1604 of the FSIA, and not claims of immunity from prejudgment attachment based on Section 1609 of the FSIA. The decisions cited can be analogized to cases involving such claims as "a double-jeopardy defense ... a public official's qualified immunity from suit, and ... a witness's absolute immunity," *Segni*, 816 F.2d at 345, the denial of which are immediately appealable on the ground that the protections are designed to guarantee not only an acquittal but also freedom from trial. Thus, like a double jeopardy claim, a foreign state's claim of immunity from suit under Section 1604 is a claim of immunity from pretrial and trial proceedings as well as a claim to a favorable outcome. *See id.* at 347 ("A foreign government should not be put to the expense of defending what may be a protracted lawsuit without an opportunity to obtain an authoritative determination of its amenability to suit at the earliest possible opportunity."); *see also Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2814–15, 86 L.Ed.2d 411 (1985) ("A major characteristic of the denial or granting of a claim appealable under *Cohen* ... is that 'unless it can be reviewed before [the proceedings terminate], it never can be reviewed at all.' ") (citation omitted).

■ Assuming that an order requiring the posting of security is an "attachment" of a foreign state's property within the meaning of the FSIA—a matter about which doubt exists, *see Sperry Int'l Trade, Inc. v. Government of Israel*, 689 F.2d 301, 305 n. 7 (2d Cir.1982); *Willamette Transport, Inc. v. CIA. Anonima Venezolana de Navegacion*, 491 F.Supp. 442, 443–44 (E.D.La.1980)—such an order is not analogous to either a sovereign immunity claim or an immunity claim under Section 1604. In those cases, costly proceedings would follow an erroneous denial of the claim unless the order were appealable. In such a case, the litigant, be it domestic sovereign or foreign state, would ultimately prevail but only after bearing the cost of a trial. This ultimate success would not redress the erroneous denial of an immunity from the trial itself.

■ In the case of an order requiring security, an erroneous grant of such an order will not subject a foreign state to a proceeding that could be avoided by a successful appeal. The immunity conferred by Section 1609 relates solely to the merits of the order requiring security. However, as noted, the merits of an order granting security may not be appealed under the collateral order doctrine. We perceive no reason to distinguish for purposes of appellate review between an order granting security that is erroneous on the merits and an identical order that is issued in the face of a statute such as the FSIA stating that a party is "immune" from such an order. The cases denying jurisdiction over orders granting security are thus applicable, and we therefore dismiss the appeal.

B. *Mandamus*

■ We have often deemed it appropriate to treat an appeal dismissed for lack of jurisdiction as a petition for a writ of mandamus. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987). In view of NNPC's claim that Judge Keenan disregarded a plain statutory directive—a matter that might well be redressable through a mandamus proceeding—we believe that to be the appropriate course in the instant matter. The familiar principles governing petitions for a writ of mandamus need be only briefly repeated. Mandamus may not be used to address error, but is available to redress usurpations of power or clear abuses of discretion. *Id.*

Mandamus is not warranted in the present case. The issue before us concerns Judge Keenan's refusal to vacate the order requiring NNPC to post security on the ground that NNPC raised the effect of Section 1609 only in its motion for reconsideration. After NNPC first requested a stay in the proceedings under Article VI of the Convention, CTFC responded by arguing that, if the district court should decide to stay the proceedings, then it should require NNPC to post security as Article VI also provides. The only matter argued concerning security involved not the legality of such an order but the amount to be posted.

NNPC thus never mentioned the immunity now claimed under Section 1609.

In its memorandum in support of a motion for reconsideration, NNPC argued for the first time that Judge Keenan's order requiring security was an attachment under Section 1609. The district court did not reach the merits of the issue but rather rejected the claim as untimely under Civil Rule 3(j) of the Southern District of New York. That Rule provides that, with regard to motions for reconsideration, "[t]here shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." This rule has been interpreted as precluding arguments raised for the first time on a motion for reconsideration. *See Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990) ("a party making a motion for reargument may not, under Civil Rule 3(j), advance new facts, issues or arguments not previously presented to the Court"); *Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n, Inc.*, 624 F.Supp. 856, 857 (S.D.N.Y.1985).

■ We believe that the applicability and effect of Section 1609 are not matters, like subject-matter jurisdiction, that may be raised at any time by a foreign state. We therefore believe that a district court may require a foreign state to invoke Section 1609 in its initial response to the opposing party's requests for an order of attachment, and the court may reject as untimely any later assertion of Section 1609's prohibitions. This wholly procedural rule does not infringe on the prerogatives of a foreign state under the FSIA. It merely imposes orderly procedures upon the assertion of those prerogatives. Judge Keenan's refusal to address the merits of NNPC's belated invocation of Section 1609 was thus neither a usurpation of power nor a clear abuse of discretion. Treating the appeal as a petition for a writ of mandamus, we deny the petition.

## CONCLUSION

We dismiss the appeal for lack of jurisdiction. Treating the appeal as a petition for writ of mandamus, we deny the petition.

MAHONEY, Circuit Judge, concurring in the judgment.

I concur in the judgment of affirmance, but write separately because of my disagreement with the majority's ruling as to appealability.

I note at the outset the majority's observation that *Sperry Int'l Trade, Inc. v. Government of Israel*, 689 F.2d 301, 305 n. 7 (2d Cir.1982), and *Williamette Transport, Inc. v. CIA. Anonima Venezolana de Navegacion*, 491 F.Supp. 442, 443–44 (E.D.La.1980), cast doubt upon the proposition "that an order requiring the posting of security is an 'attachment' of a foreign state's property within the meaning of the FSIA." *Williamette* involved a special situation of "equality of security" between an admiralty claimant and counterclaimant, and in any event is not binding authority here. *Sperry* ruled that an interim arbitral award directing that the proceeds of a letter of credit be held jointly in escrow by the parties to the arbitration was "an *in personam* order, not an attachment order of the sort forbidden by § 1609." 689 F.2d at 305 n. 7.

Somewhat more recently, however, we held in *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983), that an injunction prohibiting negotiation of letters of credit was an FSIA "attachment," stating: "The FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property." 706 F.2d at 418; *see also Raji v. Bank Sepah–Iran*, 131 Misc.2d 158, 162, 495 N.Y.S.2d 576, 581 (Sup.Ct.1985) ("The congressional intent was to encompass all encumbrances and restraints imposed to prevent the dissipation of assets before judgment."). The restraint involved here in compelling a bond in excess of ten million dollars is at least as severe an imposition upon property interests as the injunction which *S & S Machinery* held to be an FSIA "attachment."

In any event, the majority opinion is premised upon the assumption (which I consider a correct view of the law) that the district court's order requiring the posting of security was an "attachment" of a foreign state's property within the meaning of 28 U.S.C. §§ 1609 and 1610 (1988). Section 1609 provides that "the property in the United States of a foreign state shall be *immune* from attachment" (emphasis added). The majority concludes, however, that there is "no reason to distinguish for purposes of appellate review between an order granting security that is erroneous on the merits and an identical order that is issued in the face of a statute such as the FSIA stating that a party is 'immune' from such an order."

I disagree. The majority regards as distinguishable a line of cases allowing immediate appeal from denials of claims of immunity under the FSIA. *See Stena Rederi AB v. Comision de Contratos del Comite*, 923 F.2d 380, 385–86 (5th Cir.1991); *Compania Mexicana de Aviacion, S.A. v. United States District Court*, 859 F.2d 1354, 1358 (9th Cir.1988); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346–47 (7th Cir.1987)). Admittedly, the immunity denied in these cases was immunity from subject matter jurisdiction pursuant to 28 U.S.C. § 1604 (1988), which affords protection from the "expense of defending what may be a protracted lawsuit." *Compania Mexicana*, 859 F.2d at 1358 (citing *Segni*, 816 F.2d at 345). Providing security in the amount of $10,255,728.80 may be a lesser burden, but it is surely not *de minimis*.

Congress valued the protection against prejudgment attachment so highly, furthermore, that it specified that such immunity may only be "explicitly" waived. *See* 28 U.S.C. § 1610(d)(1) (1988). On the other hand, section 1604 immunity from subject matter jurisdiction, as well as immunity from execution of judgment and attachment in aid of execution, may be waived "either explicitly or by implication." *See id.* §§ 1605(a)(1), 1610(a)(1). It is accordingly my view that the majority's ruling on appealability gives short shrift to the congressional policy underlying FSIA immunity from pretrial attachment, and that appeals invoking that immunity properly come within the "collateral order" rule of

*Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), as amplified in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

I nonetheless concur in the judgment of the majority. Whether this appeal is regarded as before us pursuant to the collateral order exception to 28 U.S.C. § 1291 (1988), as I would rule, or is examined by the more stringent standards of mandamus, I agree with the majority's conclusion that the district court did not abuse its discretion in ruling, pursuant to Civil Rule 3(j) of the Southern District of New York, that NNPC's invocation of the FSIA was untimely. *See* Fed.R.Civ.P. 83 (district courts may adopt rules not inconsistent with Federal Rules of Civil Procedure) and 12(g) (as a general rule, defense not asserted in initial motion presenting other defenses may not be asserted by subsequent motion). This is not a ruling, of course, that anything NNPC did amounted to an explicit waiver pursuant to section 1610(d)(1). Rather, it is a ruling that the section 1610(d)(1) defense was not timely asserted.